**Noah CARTER, Plaintiff,**

v.

**N.P. MULLER, et al., Defendants.**

**No. Civ.A. 98–6348.**

United States District Court,
E.D. Pennsylvania.

April 8, 1999.

Noah Carter, Graterford, PA, plaintiff pro se.

Francis R. Filipi, Office of Attorney General, Harrisburg, PA, for defendants.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

Petitioner Noah Carter has applied for parole several times since he became eligible to do so in 1995, and each time his parole has been denied. He alleges that these denials violate various of his constitutional rights, and on that basis seeks a writ of habeas corpus. The Magistrate Judge's Report and Recommendation recommends that Mr. Carter's petition be dismissed for failure to exhaust state remedies. I agree with the Report and Recommendation's reasoning and conclusion, but I write further to elaborate on my assessment of the current state of Pennsylvania's law regarding exhaustion, and additionally to deny the petition on its merits.

### Exhaustion of State Remedies

The Third Circuit's ruling in *Burkett v. Love*, 89 F.3d 135 (3d Cir.1996) is binding on this court. There, the Third Circuit said, "It appears to us ... that [petitioner] has available three potential ways of attacking the denial of parole in Pennsylvania courts—appeal, mandamus, or habeas corpus." *Id.* at 142. The court acknowledged, however, that it so held in the face of "somewhat unsettled state law in this

area," and noted that "[o]bviously, a ruling by the state Supreme Court or Commonwealth Court discussing the ... proper channels for bringing such claims would be helpful in this frequently litigated area of state law." *Id.*

Since the Third Circuit's request for clarification in *Burkett*, both the Pennsylvania Commonwealth Court and Supreme Court have more or less obliged, most notably in *Weaver v. Pennsylvania Board of Probation and Parole*, 688 A.2d 766 (Pa.Commw.Ct.1997), *Myers v. Ridge*, 712 A.2d 791 (Pa.Commw.Ct.1998), and *Rogers v. Pennsylvania Board of Probation and Parole*, 724 A.2d 319 (Pa.1999). These decisions make it clear that two of the three potential state avenues *Burkett* predicted are foreclosed. First, direct appeal is not available. *See Rogers*, 724 A.2d at 322 ("parole decisions are not ones which are subject to appellate review by the courts").[1] Next, although the *Rogers* court did not address the availability of state habeas corpus relief, the Commonwealth Court in *Weaver* explicitly responded to *Burkett* and "disagree[d] with the Third Circuit's conclusion that a prisoner can challenge a decision of the Board denying parole by filing a petition for a writ of habeas corpus." 688 A.2d at 775 n. 17.

The Third Circuit had previously declined to decide the issue of "whether it is necessary to pursue mandamus in order to exhaust state remedies as a pre-condition to pursuing federal habeas corpus relief," *Hankins v. Fulcomer*, 941 F.2d 246, 251 (3d Cir.1991); implicit in *Burkett's* naming mandamus as one of the available state court avenues, though, is the rule that mandamus must be exhausted. *See Burkett*, 89 F.3d at 141, 142. The state Su-

---

1. This decision seems to be "seriously flawed" in the same way the Third Circuit warned about an earlier case: it "fails to recognize that the curtailment of a liberty interest is not the only way that the Constitution may be violated." *Burkett*, 89 F.3d at 139 (discussing *Reider v. Pennsylvania Bd. of Probation and Parole*, 100 Pa.Cmwlth. 333, 514 A.2d 967 (Pa.Commw.Ct.1986);) *see also Rogers*, 724 A.2d at 324 (Justice Nigro dissenting on the grounds that "[t]he denial of parole may be improperly based on considerations violating other constitutional rights"). Of course, this court is bound by the state court's decision on a question of state law. Even if the court appears to be making the very mistake of which *Burkett* warned, it is clear that it will not offer appellate review of these claims. This court must acknowledge this result and determine the consequences for our exhaustion doctrine.

preme Court in *Rogers* said the same thing: the court stated in a footnote that prisoners "may be entitled to pursue allegations of constitutional violations against the Parole Board through a writ of mandamus.... Mandamus is an extraordinary remedy which is available to compel the Parole Board to conduct a hearing or to apply the correct law." 724 A.2d at 323 n. 5. That statement does not provide guidance as to whether mandamus is available to a prisoner such as Mr. Carter, who claims not that he was denied a hearing or that an incorrect law was applied but that the application of the correct law inflicted on him a constitutional violation. For such guidance I look then to the Commonwealth Court; however, that court's position on the availability of mandamus for prisoners claiming constitutional violations in their parole denials remains somewhat muddled.

In *Weaver v. Pennsylvania Board of Probation and Parole*, 688 A.2d 766 (Pa. Commw.Ct.1997), the court flatly said that mandamus was not available to a prisoner denied parole based upon an unconstitutional factor. *See id.* at 772. The court explained,

> Mandamus is based upon a duty by an agency to follow a law and is available only when, under a correct interpretation of that law, the agency has an absolute ministerial duty—no choice—to act in a certain way. Mandamus cannot be used to say that an agency considered improper factors, that its findings of fact were wrong, or that the reasons set forth in its decision are a pretense. If that was the nature of mandamus, there

would be no difference between it and an appeal from the agency's decision or other forms of actions to address those concerns.

*Id.* at 777 (footnote omitted).[2] In an opinion issued less than a year later that does not mention *Weaver,* the Commonwealth Court decided *Myers v. Ridge*, 712 A.2d 791 (Pa.Commw.Ct.1998). There, a prisoner filed "a petition for review in the nature of a mandamus in [the Commonwealth Court's] original jurisdiction," claiming deprivations of due process, an ex post facto violation, and a denial of equal protection. *Id.* at 794. The court dismissed the petition upon the government's motion, but only after a thorough consideration of the merits of each constitutional claim. The court's preliminary statement was that "decisions to grant or deny parole are generally not appealable except to the extent that a constitutional or statutory violation has occurred." *Id.* Of course, implicit in that statement, and confirmed by the court's action, is the rule that parole decisions *are* reviewable to the extent that a constitutional or statutory violation has occurred.[3]

■ In sum, based on my reading of the state case law since the Third Circuit's decision in *Burkett,* the Pennsylvania courts provide a single avenue of relief to prisoners claiming their parole denials were unconstitutional: a mandamus action in the Commonwealth Court's original jurisdiction. Because Mr. Carter did not exhaust this available remedy, the Report and Recommendation correctly concludes that his petition must be dismissed.

---

**2.** In describing the scope of mandamus this way, *Weaver* rejected a more expansive articulation offered by the dissent, one which would include the arbitrary exercise of discretion: "Where the action sought to be compelled is discretionary, mandamus will not lie to compel that discretionary act *except* where such exercise is arbitrary, fraudulent or based upon a mistaken view of the law." 688 A.2d at 781 (Friedman, J., dissenting), *citing County of Allegheny v. Pennsylvania,* 507 Pa. 360, 490 A.2d 402 (Pa.1985); *Commonwealth ex rel. Lindsley v. Robinson,* 30 Pa.Cmwlth. 96, 372 A.2d 1258 (Pa.Commw.Ct.1977).

**3.** Although it is odd that the court used the word "appealable" instead of speaking of mandamus, it must be read to mean "reviewable." The court had a mandamus petition before it, not an appeal. The case Myers cites for the quoted proposition, *Lawson v. Commonwealth Department of Corrections,* 114 Pa.Cmwlth. 573, 539 A.2d 69 (Pa. Commw.Ct.1988), also did not involve an appeal, but "an action in our original jurisdiction seeking review of Department action." *Id.* at 71.

*Denial on the Merits*

Moreover, even though Mr. Carter has not exhausted the available state court remedy of mandamus, his petition must be denied on its merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

■ The petitioner claims that the Parole Board violated his constitutional rights each time it denied his parole. Petitioner's claims can basically be broken into two groups. First, he claims that in order to qualify Pennsylvania for federal grants under the 1996 amendments to the Violent Offenders Incarceration and Truth–in–Sentencing Incentive Grants Act (42 U.S.C. § 13701 et seq.), the Parole Board denies parole to prisoners who have served less than 85% of their maximum term, although Pennsylvania law provides that prisoners are eligible for parole upon completion of 50% of their maximum term. *See* 42 Pa.C.S. § 9756(b) (providing for a minimum term not exceeding one-half of the maximum term); 61 P.S. § 331.21 (providing that parole may be granted after the expiration of the minimum term). This practice, petitioner contends, is an unconstitutionally arbitrary exercise of the Board's power and is an ex post facto violation.

Constitutional claims against the Commonwealth's participation in the program have been soundly rebuffed by the Pennsylvania Commonwealth Court in *Stewart v. Pennsylvania Board of Probation and Parole*, 714 A.2d 502 (Pa.Commw.Ct.1998) and by another judge of this court in *Carter v. Ridge*, Civ.A. No. 97–5414, 1998 WL 221035 (E.D.Pa. May 5, 1998). In both those cases, the courts thoroughly explained that Pennsylvania's participation in the federal grant program does not in fact require it to deny parole to prisoners who have served less than 85% of their sentences. The state is eligible under a provision that requires that a "person convicted of [the specified crimes] on average serve not less than 85 percent of the prison term established under the State's sentencing and release guidelines." 42 U.S.C. § 13704(a)(3)(A). It is true that the alternative way for a state with an indeterminate sentencing regime to qualify is by showing that such prisoners "on average serve not less than 85 percent of the maximum prison term," 42 U.S.C. § 13704(a)(3)(B), but Pennsylvania does not use this provision. Pennsylvania qualifies under subsection (A) and thus is not required to keep its prisoners incarcerated for 85% of their maximum terms. *See Carter*, 1998 WL 221035, at *2–3. The Commonwealth's regime of parole eligibility at the completion of prisoners' minimum sentences remains unaffected by the 1996 federal grant act. Thus, petitioner fails to state grounds for habeas relief on this contention.[4]

■ Second, Mr. Carter contends that his failure to complete a sex offenders' treatment program is an unconstitutional basis for denying his parole.[5] He argues that because such programs have no rehabilitative value to prisoners, participation is an arbitrary requirement. He also argues that because he is no longer serving a sentence for rape, the sex offender pro-

---

4. Relatedly, Mr. Carter makes a general complaint that the state has adopted new and more stringent parole requirements since he has been imprisoned, constituting an ex post facto violation. The new parole policies have been held not to violate the ex post facto clause. *See Stewart*, 714 A.2d at 508–09. The court discerns two other contentions in his petition that do not merit discussion: He contends that the parole board should not consider the recommendation or non-recommenda-

tion of the prison for his parole, because any misbehavior while in prison is dealt with by the prison's disciplinary rules and should not carry over to the parole decision. He also argues that it violated his rights when the Board gave as a reason for one denial that he was removed from a CCC, when in fact he was not ever in a CCC. The court has considered these arguments and rejected them.

5. He attaches his denial notices to his petition. One dated 5/16/95 said that he must

gram does not apply to him.[6] These claims also fail to establish grounds for habeas relief, because the consideration of whether prisoners complete relevant treatment programs before being released into the community is not at all arbitrary. Notwithstanding petitioner's own beliefs that the programs do not work and that he does not need one because the term of his rape sentence expired some years ago, considering a prisoner's participation in treatment is entirely consistent with the Parole Board's duty to "procure information as full and complete as may be obtainable with regard to the character, mental characteristics, habits, antecedents, connections and environment" of the prospective parolee. 61 P.S. § 331.19; *see also Weaver v. Pennsylvania Bd. of Probation and Parole*, 688 A.2d 766, 775 (Pa. Commw.Ct.1997) ("the Board's requirement that he receive treatment and be 'cured' prior to being released on parole ... is a legitimate requirement imposed by the Board to ensure that a prisoner is suitable for parole").[7]

An appropriate Order follows.

### ORDER

**AND NOW,** this 8th day of April, 1999, after independent consideration of the petition for habeas corpus and the answer thereto, the motion for appointment of counsel, and after review of the Report and Recommendation of United States Magistrate Judge Diane M. Welsh, it is **ORDERED** as follows:

(1) The Report and Recommendation is **APPROVED** and **ADOPTED.**

(2) The petition for a writ of habeas corpus is **DENIED** and **DISMISSED.**

(3) There is no probable cause for appeal and no substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability.

(4) The motion for appointment of counsel is **DENIED.**

---

participate in a prescriptive program plan. *See* Ex. 5. One dated 7/10/96 said that he must participate in a sex offender program. *See* Ex. 3. One dated 12/11/97 said that he must continue his psychological and psychiatric evaluations addressing the need for sex offender treatment. *See* Ex. 2.

6. Mr. Carter was convicted of rape in 1977, and of robbery, theft, and voluntary manslaughter in 1978. His maximum sentence for the rape conviction expired in 1991, at which time he began serving a concurrent sentence for the 1978 convictions. *See* Ex. 7.

7. Any claim about the assignment of Mr. Carter into such a program is not properly made against the Parole Board, but against the Department of Corrections, which administers the programs. *See Weaver*, 688 A.2d at 775 (ruling that if a prisoner challenges the Department's administration of the treatment program, "the proper vehicle to raise that challenge would be via a cause of action against the Department raising the constitutionality of the treatment program and not via an appeal from a decision of the Board denying parole").