**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0749n.06

No. 11-3835

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jul 11, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| LONNIE LEE JERGENS, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| STATE OF OHIO DEPARTMENT OF | ) | DISTRICT OF OHIO |
| REHABILITATION AND CORRECTIONS | ) | |
| ADULT PAROLE AUTHORITY; ELLEN W. | ) | |
| VENTERS; BOBBY BOGAN, | ) | **O P I N I O N** |
| | ) | |
| **Defendants-Appellees.** | ) | |

Before:  MOORE, WHITE, and LUCERO,[*] Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  Plaintiff-Appellant Lonnie Jergens appeals the district court's dismissal of his 42 U.S.C. § 1983 claim.  Jergens, who is an inmate in an Ohio state prison, maintains that Defendants-Appellees the Ohio Adult Parole Authority ("OAPA") and two individual members of the Ohio Parole Board, Ellen Venters and Bobby Bogan, violated his rights under the Fifth and Fourteenth Amendments to the U.S. Constitution by failing to provide him a meaningful hearing before denying his parole.  Because we agree that Jergens has failed to state a claim for relief, we **AFFIRM** the district court's judgment.

**I.  BACKGROUND**

---

[*]The Honorable Carlos F. Lucero, Circuit Judge for the United States Court of Appeals for the Tenth Circuit, sitting by designation.

On February 7, 1992, Jergens was convicted of murder and sentenced to an indefinite period of incarceration. According to the complaint, Jergens was scheduled for a parole-eligibility hearing on April 2, 2010. Shortly before that date, on March 25, 2010, Jergens's attorney met with OAPA-board member Bogan to discuss the hearing and to clarify supposedly false information about Jergens's criminal record and history that had been used against Jergens in prior parole hearings. Bogan allegedly told Jergens's attorney "that he was not interested in this information or in the past" and that he was concerned only with Jergens's plans for the future. R. 1 (Compl. ¶ 16). Jergens maintains that despite his attorney's efforts to clarify the record, OAPA-board member Venters subsequently used the false information at his hearing to deny his parole.[1] Jergens also challenges the validity of the hearing on the basis that he had previously filed suit against Venters, which Jergens asserts made it a conflict of interest for her to act as the hearing officer at his hearing.

Jergens filed a motion for reconsideration of the parole board's decision, which was denied. Following the denial, Jergens filed suit against the OAPA and individual board members Bogan and Venters, alleging that the actions of these defendants violated his constitutional right to due process. Jergens also claims that Bogan's failure to accept the corrected facts presented by Jergens's attorney and Venter's continued use of the allegedly false information amounted to a conspiracy to deprive

---

[1]Jergens's complaint never identifies the nature of the false information or the way in which Venters improperly used it against him.

Jergens of his constitutional rights. In his request for relief, Jergens seeks monetary damages and a meaningful parole hearing.[2]

On April 15, 2011, the defendants filed a motion to dismiss for failure to state a claim. They presented two grounds for dismissing the complaint: (1) the lack of due-process rights with respect to parole under Ohio's statutes and (2) the OAPA's immunity under the Eleventh Amendment. Jergens's response maintained that "there are Due Process rights to a 'meaningful review' in the parole process," and that, based on an Ohio Supreme Court case involving a state entity, Ohio can be sued in federal court. R. 12 (Resp. to Mot. to Dismiss at 2). In a Report and Recommendation, the magistrate judge recommended that Jergens's complaint be dismissed because Ohio had not created any liberty interest in release on parole. The magistrate judge further noted that even if Ohio had created a liberty interest, due process in the parole context requires only that the prisoner have an opportunity to be heard and receive a statement of reasons for denying parole, both of which Jergens was afforded in this case. The district court adopted the magistrate judge's report, concluding that because there was no constitutional liberty interest at stake, § 1983 does not provide relief for Jergens's claim that he was denied meaningful consideration. Jergens appealed.

---

[2]The paragraphs in the complaint appear to be misnumbered. The record suggests that this is merely a clerical error and that no pages are missing from the complaint.

## II.  ANALYSIS

### A.  Jergens's Motion to Take Judicial Notice

Before addressing the merits of Jergens's appeal, we must first rule on his motion for judicial notice, in which Jergens seeks—for the first time—to introduce materials that were filed in related state-court proceedings, including motions, hearing transcripts, and documentation relating to his parole proceedings.  These materials, however, are not appropriate for the taking of judicial notice. *Cf.* Fed. R. Evid. 201(b) (permitting judicial notice of facts "not subject to reasonable dispute because [they are] (1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").  Although we are certainly permitted to take judicial notice of court records and judicial proceedings under some circumstances, such as to confirm the fact of filing, *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2159 (2009), we may not do so in order to discern the truth of the facts asserted within that filing.  This is particularly so in cases like this one, when the significance of the records sought to be judicially noticed is subject to dispute, *United States v. Husein*, 478 F.3d 318, 337 (6th Cir. 2007), or when the records are introduced merely to bolster factual allegations that should have been presented in the initial complaint, *Armengau v. Cline*, 7 F. App'x 336, 345 (6th Cir. 2001) (unpublished opinion) (reversing a district court decision to take judicial notice of facts in the state-court proceedings and stating in the qualified-immunity context that "it is emphatically not the job of the court to salvage a complaint by taking judicial notice of facts the plaintiff should have included in an amended complaint or a

responsive pleading"). Moreover, because these documents were not submitted to the district court, we are under no obligation "to enlarge the record on appeal by taking judicial notice of extra-record facts for the first time." *United States v. O'Dell*, 805 F.2d 637, 643 (6th Cir. 1986). Accordingly, we deny Jergens's motion. Regardless, even if we were to consider the documents he proposes, because Jergens's claim is foreclosed by Supreme Court and Sixth Circuit precedent, those materials would not change the outcome of his case.

## B. The District Court's Dismissal

Turning to the district court's order, Jergens insists that Ohio law creates a liberty interest in a meaningful parole process and that the district court therefore erred in dismissing his case. Because the district court dismissed Jergens's case pursuant to Federal Rule of Civil Procedure 12(b)(6), we review the complaint de novo, accepting Jergens's allegations as true and taking all reasonable inferences in his favor. *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008), *cert. denied*, 555 U.S. 1099 (2009). We do not, however, "accept as true legal conclusions or unwarranted factual inferences." *Id.* (internal quotation marks omitted).

The Supreme Court mandates a two-step analysis for procedural due-process claims: "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011). As to the first step, it is now axiomatic that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1,

7 (1979). States in fact have no duty even to establish a system for parole. *Id.* When such a system is in place, however, the existence of a liberty interest in release is entirely dependent on state law. *See id.* at 12. Thus, if state statutes vest complete discretion to the parole board to determine parole eligibility, no liberty interest exists. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 464–65 (1989). If, on the other hand, state law wrests from the board selected aspects of its discretion—for example by unequivocally requiring release upon the prisoner's demonstration of certain conditions, *see Greenholtz*, 442 U.S. at 11, 13, or in the absence of others, *see Board of Pardons v. Allen*, 482 U.S. 369, 377–78 (1987)—a liberty interest protectable under the Due Process Clause is recognized.

In accordance with these principles, we begin with the question whether Ohio law recognizes the existence of a liberty interest in parole. That answer is governed directly by our recent opinion in *Michael v. Ghee*, 498 F.3d 372, 378 (6th Cir. 2007), *cert. denied*, 553 U.S. 1005 (2008), which held under the same statutory and regulatory structure relevant to the present case that "the state of Ohio has not created a liberty interest in parole eligibility, as it has a completely discretionary parole system."[3] (internal quotation marks omitted); *see also Jago v. Van Curen*, 454 U.S. 14, 20 (1981) (concluding under an earlier similar regulatory structure that "[p]arole for Ohio prisoners lies wholly

---

[3]Ohio Revised Code § 2967.03, which governs the OAPA's authority, states in relevant part that the OAPA "*may* . . . grant a parole to any prisoner for whom parole is authorized, if in its judgment there is reasonable ground to believe that . . . paroling the prisoner would further the interests of justice and be consistent with the welfare and security of society" (emphasis added). Although the Ohio Administrative Code identifies more specific procedures for releasing prisoners on parole, these too are discretionary. *See* Ohio Admin. Code § 5120:1-1-07(A) ("An inmate *may* be released on or about the date of his eligibility for release, unless the parole board . . . determines that he should not be released on such date for one or more of the following reasons . . . .").

within the discretion of the OAPA," and thus that "[t]he statutes which provide for parole do not create a protected liberty interest for due process purposes" (internal quotation marks omitted)). Thus, it is well established that Ohio law does not create a protected liberty interest in release from parole.[4]

In attempting to identify a relevant liberty interest in spite of these adverse authorities, Jergens relies primarily on two precedents. The first is the Ohio Supreme Court decision in *Layne v. Ohio Adult Parole Authority*, 780 N.E.2d 548, 555 (Ohio 2002), which, while recognizing the broad discretion given to the OAPA under Ohio statutes, held that the OAPA's parole guidelines nonetheless require that criminal offenders as a procedural matter receive "meaningful consideration for parole." Second is *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005), which recognized that constitutional challenges to parole-board procedures are cognizable under 42 U.S.C. § 1983 so long as the action's success is not dependent on demonstrating the invalidity of confinement. Neither decision helps Jergens's case.

---

[4]Jergens also seems to argue that Bogan's "official" statement that he would not consider Jergens's attorney's proposed corrections to Jergens's parole file constitutes an official policy statement that somehow curbs the OAPA's discretion and creates a liberty interest. Appellant Br. at 7. Because Jergens did not raise this argument below, we need not consider it on appeal. *Molina-Crespo v. U.S. Merit Sys. Protection Bd.*, 547 F.3d 651, 662 (6th Cir. 2008) ("[T]his court will not consider claims that are presented for the first time on appeal nor arguments that are not properly raised below." (internal quotation marks omitted)). Furthermore, even assuming that the import of Bogan's statement could be stretched to the degree that Jergens proposes, the Ohio Supreme Court has made clear that the OAPA is not bound by its own policy guidelines because "they place no 'substantive limits on official discretion.'" *State ex rel. Hattie v. Goldhardt*, 630 N.E.2d 696, 698 (Ohio 1994) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). Thus, even if Bogan's statement could properly be classified as a policy statement, that conclusion would have no impact on the OAPA's discretion or the existence of a liberty interest.

First and foremost, the existence of state-mandated procedural requirements does not, in and of itself, create a protected liberty interest. *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983) ("[A]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause."); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994) ("[P]rocedural statutes and regulations governing parole do not create federal procedural due process rights . . . ."), *cert. denied*, 513 U.S. 1158 (1995); *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 237 (6th Cir. 1991) (evaluating Ohio statutory and regulatory provisions governing parole and concluding "that procedural requirements alone cannot establish a liberty interest, and a violation of state regulations requiring a particular kind of hearing cannot violate the Due Process Clause absent some independent basis for finding a liberty interest that has been taken away" (citation and internal quotation marks omitted)).[5]

---

[5]This case does not involve a challenge to a parole decision as based either on blatantly unconstitutional policies or considerations, such as a prisoner's race or religion, or on a wholly arbitrary decision-making process. *Cf. Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996) (noting that even fully discretionary statutes governing state parole boards do not permit "totally arbitrary parole decisions founded on impermissible criteria" (internal quotation marks omitted)). *But cf. Bell v. Anderson*, 301 F. App'x 459, 462 (6th Cir. 2008) (unpublished opinion) (citing *Burkett* and observing that the reasoning in that and similar cases has not been adopted in this circuit). Neither this decision nor any binding circuit precedent, however, forecloses the possibility that, in an appropriate case, a parole board's reliance on unconstitutional factors—or even on false information in the parole file—could constitute a due-process violation. But in this case, Jergens's nonspecific allegations of falsity simply fail to make out such a claim. *Cf. Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001) ("While we have held that the use of false information in a parole file can be a due process violation, prisoners cannot make a conclusory allegation regarding the use of such information as the basis of a due process claim."). In fact, Jergens has not asserted at all that the use of false information independently constituted a due-process violation; nor has he claimed that the OAPA's actions were grounded in constitutionally impermissible considerations. Instead, Jergens's claim rests on the broader assertion that, as a procedural matter, he was denied the meaningful

8

What is more, even if Jergens did have a protected liberty interest, "the question of which due process requirements apply is one of federal law, not [state] law." *Cooke*, 131 S. Ct. at 862 n.*. Thus, whether the parole board met Ohio's *state-law* requirements for meaningful review as established by *Layne* is not dispositive of Jergens's *federal* due-process claim; as a constitutional matter, Jergens received adequate process so long as "he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied." *Id.* at 862.[6] Indeed, the Supreme Court has explicitly rejected the view that federal courts must apply state procedural rules that go beyond the scope of the minimum required under the Due Process Clause, concluding that "[s]uch

hearing that is required under Ohio law. As discussed above, in the absence of a protected liberty interest, his purely procedure-based claim must fail. We therefore leave the merits of the related due-process questions for another day.

[6]It should be noted that Jergens also relies extensively on the Ohio Court of Appeals decision in *Ankrom v. Hageman*, Nos. 04AP-984, 04AP-985, 04AP-986, 04AP-987, 04AP-988, 04AP-989, 04AP-990, 04AP-991, 04AP-993, 04AP-994, 2005 WL 737833 (Ohio Ct. App. Mar. 31, 2005), to support his contention that Ohio recognizes a right to meaningful review during the parole process—another argument that appears for the first time on appeal. Applying *Layne v. Ohio Adult Parole Authority*, 780 N.E.2d 548 (Ohio 2002), to a class action involving parole-eligible prisoners who had pleaded to lesser-included offenses but were serving lengthier sentences based on the OAPA's determination that they fell into a higher sentencing category than warranted under the offense of conviction, *Ankrom* affirmed a trial court decision finding that such action by the OAPA constituted a denial of meaningful consideration in violation of *Layne*. *Ankrom*, 2005 WL 737833, at *7. Jergens now asserts that he is a member of the class of prisoners entitled to a new hearing in the wake of the *Ankrom* decision and that the meaningful-hearing requirement therefore applies to Jergens "not only in general, but specifically." Reply Br. at 1. Apart from his reliance on a general right to meaningful review derived from *Layne*, however, Jergens did not raise this argument below or even cite the *Ankrom* case. Accordingly, we need not consider the argument here. *Molina-Crespo*, 547 F.3d at 662. In any event, Jergens's reliance on *Ankrom* suffers from the same deficiencies as his reliance on *Layne*, and thus, even if we were to consider the argument, it does not support his claim.

reasoning would subject to federal-court merits review the application of all state-prescribed procedures in cases involving liberty or property interests." *Id.* at 863; *see also Sweeton*, 27 F.3d at 1165 ("The parole authorities of the State of Michigan may have been required to follow their own procedural statutes and regulations on parole . . . as a matter of *state* law, but there is not now any viable legal theory by which Michigan state authorities are required to follow such procedural rules as a matter of *federal* due process."). In light of these precedents, that Ohio courts have established procedural requirements governing OAPA hearings does not support Jergens's federal claim under § 1983. *See Michael*, 498 F.3d at 374 ("42 U.S.C. § 1983 does not provide relief for a violation of state law."). Jergens is thus unable to state a viable claim for relief against either the OAPA or the individual defendants Bogan and Venters, and the district court was correct in dismissing his case.

### III.  CONCLUSION

Because Ohio law does not create a liberty interest in parole, Jergens's § 1983 claim challenging the OAPA's and the individual parole-board members' implementation of Ohio's meaningful-hearing requirements in determining his eligibility for parole necessarily fails. Accordingly, we **AFFIRM** the judgment of the district court.