**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0704n.06
Filed: November 18, 2008

06-4558

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| NOLEN BELL, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CARL S. ANDERSON, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Respondent-Appellee. | ) | |

Before: DAUGHTREY and McKEAGUE, Circuit Judges; VAN TATENHOVE,[*] District Judge.

**PER CURIAM.** Petitioner Nolen Bell is an Ohio prison inmate serving a life sentence imposed as a result of his 1983 conviction for aggravated murder, an offense that arose from a fight in the parking lot of an after-hours Cleveland bar. He filed this action seeking habeas relief under 28 U.S.C. § 2254 based on his claim that the Ohio parole board's decision in 2004 to postpone his release date denied him due process of law under the Fourteenth Amendment. Because the district court properly concluded that Ohio inmates do not possess a liberty interest in an anticipated parole date, and because the parole board's actions in this regard cannot be considered "conscience-shocking," we affirm the court's denial of relief.

---

[*]The Hon. Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Bell's first parole hearing occurred in 1998, at which time his parole offense level was lowered from an offense category 13, which carried with it a guideline sentence of 330 months to life, to a category 12, which carries a sentence of 270-330 months. This action by the parole board was based on the petitioner's record of good behavior while incarcerated, on the circumstances surrounding the original offense, and on Bell's successful participation in various prison programs. By all accounts, Bell was a model prisoner who had not been subject to a single disciplinary action during his many years of incarceration. On the basis of these determinations, the parole board concluded that Bell needed to serve only another six years and seven months and that he would then be subject to parole. As this period came to an end, Bell went through a second parole hearing in November 2004, and he was scheduled for release on January 10, 2005. On January 6, 2005, however, Bell received a "stop release" notice that purported to result from new information "reflect[ing] on . . . the release decision." At Bell's next parole hearing on April 11, 2005, the parole board determined that "release at [that] time would demean the seriousness of the offense," reinstated an offense category of 13, and postponed Bell's parole date for an additional five years.

Bell then filed this habeas action in federal court. The respondent, Warden Carl Anderson, filed a motion to dismiss, and the magistrate judge to whom the motion was referred issued a report recommending that the district court not dismiss the case at the

pleading stage. The district court nevertheless concluded that Bell had failed to present a cognizable claim for habeas relief, declined to adopt the magistrate judge's recommendation, and granted the warden's motion to dismiss. The district court also granted Bell a certificate of appealability as to "(1) whether individuals who have been granted a release date retain at least a 'residuum of liberty' sufficient to necessitate substantive due process; and (2) whether the parole board's actions were so arbitrary or capricious as to shock the conscience, thereby supporting a substantive due process claim."

## DISCUSSION

In the absence of a state court decision on the merits, this case is governed by 28 U.S.C. § 2254(a), which requires the petitioner to demonstrate that "he is in custody in violation of the Constitution or laws or treaties of the United States." On appeal, Bell asserts that his parole date was "rescinded" and his offense level increased in violation of the Fourteenth Amendment's guarantee that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. When an inmate asserts a right to parole premised upon substantive due process, as here, the claim involves a purported liberty interest. *See Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991). As we have previously noted:

> Although incarceration itself represents a quintessential deprivation of liberty,
> lawful incarceration does not extinguish all of a prisoner's constitutionally
> protected liberty. Prison inmates retain what the Supreme Court has

characterized as "a residuum of liberty," *Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741, 1745, 75 L.Ed.2d 813 (1983) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-56, 94 S.Ct. 2963, 2974-75, 41 L.Ed.2d 935 (1974)), despite the fact that inmates are not at liberty in the normal sense. If state law entitles an inmate to release on parole, moreover, that entitlement is a liberty interest which is not to be taken away without due process.

*Id.*

Because the granting of parole under the Ohio penal statutes is "purely discretionary," a convicted person has no legitimate claim of entitlement to parole before the expiration of a valid sentence of imprisonment – and thus no liberty interest in being paroled – even if the parole board has approved the prisoner's release on parole on or after a specified date. *Id.* at 235, 236 (quoting *Wagner v. Gilligan*, 609 F.2d 866, 867 (6th Cir.1979)). Bell is thus forced to concede, as he does on appeal, that Ohio law "does not create a liberty interest for prisoners in their parole." Instead, he argues that he has a due process right to be protected from wholly arbitrary decisions by the parole board, which in this case he identifies as the last-minute "rescission" of his impending parole and the "revocation" of his category 12 offender status. These actions by the parole board, he maintains, were sufficiently irrational to "shock the conscience" and thereby violate due process under the authority of *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998).

In making this claim, Bell relies primarily on cases from our sister circuits. The first is inapposite because it addresses not the granting but the revocation of parole. *See Caswell v. Calderon*, 363 F.3d 832, 838 (9th Cir. 2004) (rejecting the petitioner's contention that the order of revocation was "arbitrary and capricious" and, therefore, in violation of due

process because the evidence to support it was insufficient). Cases such as *Caswell* cannot control the petitioner's situation here, given the Supreme Court's distinction "between an initial grant of parole and the revocation of the conditional liberty of the parolee," considering the former to be a "mere anticipation or hope of freedom." *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 9,10 (1979).

The other group of cases on which Bell relies spring from opinions in the Third and Eighth Circuits in which the courts found due process violations on the basis of "totally arbitrary parole decisions" even in the absence of an identifiable liberty interest in parole release. *See, e.g.*, *Burkett v. Love*, 89 F.3d 135, 139-40 (3d Cir. 1996) (allegation of denial of parole in retaliation for prisoner's exercise of constitutional rights states a cognizable claim for habeas relief); *Thompson v. Armontrout*, 808 F.2d 28, 31 (8th Cir. 1986) (parole board's retaliatory denial of parole was a due process violation without identifying the liberty interest at stake, but limited to the facts of the case); *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980) ("Even if a state statute does not give rise to a liberty interest in parole release under *Greenholtz*, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons.").

Unfortunately for the petitioner, the reasoning on which these cases are based has not been adopted in this circuit. Moreover, that analysis has been criticized by other courts. *See,e.g.*, *Blair-Bey v. Quick*, 151 F.3d 1036, 1048 n.11 (D.C. Cir. 1998) (casting

doubt on whether a due process claim may be recognized in the absence of an identifiable liberty interest); *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997) ("It is therefore axiomatic that because Texas prisoners have no protected liberty interest in parole they cannot mount a challenge against any state parole review procedure on procedural (or substantive) Due Process grounds."); *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994) (holding that in the absence of a liberty interest, prisoner is not entitled to due process protection); *Shirley v. Chestnut*, 603 F.2d 805, 807 (10th Cir. 1979) (holding that in the absence of a liberty interest, "specific due process procedures requested by the appellants are not applicable").

But even if we were to follow the rule that the petitioner now urges on us, *i.e.*, that a parole board violates due process when, in the exercise of its discretion, it arbitrarily denies parole, we could not conclude that the actions of the parole board in this case rose to the standard of arbitrary conduct described by other circuit courts. In its critique of this rule, the D.C. Circuit indicated that the standard for "conduct [] so arbitrary as to violate the due process clause even in the absence of an identifiable liberty interest" is an exceptionally high one. *Blair-Bey*, 151 F.3d at 1048 n.11. Where the Third Circuit has found arbitrary action to qualify as a cognizable due process claim, it has done so only upon the establishment of egregiously arbitrary actions. In *Burkett*, for example, allegations of retaliatory denial of parole following a prisoner's exercise of constitutional rights was found to raise a cognizable due process clause claim; the Third Circuit declined to address the substance of Burkett's claim. *See Burkett*, 89 F.3d at 142. Likewise, in

*Block*, the Third Circuit concluded that a claim asserting denial of parole on the impermissible ground of the inmate's race raised a due process claim even in the absence of a liberty interest. *See Block*, 631 F.2d at 236. Here, by contrast, denial of parole was premised on the parole board's concern that a contrary decision would "demean the seriousness of the offense" of murder, an altogether routine call by a parole board exercising discretionary authority. Although the last-minute nature of the decision to renege on the prospect of immediate release was undoubtedly disappointing to the petitioner, it cannot be described as "arbitrary and capricious," even though it might appear to be essentially unfair. It certainly does not meet the "shocks the conscience" standard of *Lewis*.

Bell further asserts that he possesses a statutorily-created liberty interest in his level 12 offense category and that the parole board violated his right to due process by reassessing it. However, the certificate of appealability issued by the district court did not cover this claim, and we must decline to review it for that reason.

## CONCLUSION

For the reasons set out above, we conclude that the district court ruled correctly that the petitioner in this case failed to state a cognizable substantive due process claim because he did not identify a liberty interest that was violated by the parole board, nor did he establish that the parole board's actions were unconstitutionally arbitrary. We therefore AFFIRM the judgment of the district court.