**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 30, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RYAN ALEXANDER PETTIGREW,

Plaintiff-Appellant,

v.

ARISTEDES ZAVARAS, Executive
Director; SUSAN JONES, Warden;
LARRY REED, Warden; DENT;
SANDRA CROSS, Sgt. Intelligence
Officer; DANIEL STRAWN, Lt.
Correctional Officer; DONA
SAVISLAN, Food Services and
Laundry Program Manager;
ANTHONY A. DECESARO,
Grievance Officer; MACAIN
HILDEBRAND, Program Majors;
MARY MCCORMICK, Programs
Supervisor; DARRYL PROFFIT,
Regional Coordinator, Faith and
Citizens Programs; CHAVEZ, Case
Manager; KYLE BUFFUM, Case
Manager; DEBORAH C. ALLEN,
Parole Board Member; BECKY R.
LUCERO, Parole Board Vice Chair;
CELESTE M. CDEBACA, Parole
Board Member; MICKEY
HECKENBACH, Parole Board
Member; LESLEE V. WAGGENER,
Parole Board Member; DAVID L.
MICHAUD, Parole Board Chairman;
DALE BURKE, Hearings Officer;
COMFORT, Correctional Officer;
ROYBAL, Lt. Shift Commander,

Defendants-Appellees.

No. 12-1146
(D.C. No. 1:11-CV-00367-WYD-KLM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **McKAY** and **HOLMES**, Circuit Judges.

While an inmate of the Colorado Department of Corrections ("CDOC"), Plaintiff-Appellant Ryan Pettigrew filed a pro se 42 U.S.C. § 1983 prisoner civil-rights appeal.[1] The district court, adopting the recommendations of a magistrate judge, granted Defendants' motion to dismiss Mr. Pettigrew's claims. Mr. Pettigrew appeals this dismissal. He additionally seeks leave to proceed *in forma pauperis* ("IFP") on appeal. Exercising jurisdiction under 28 U.S.C. § 1291, and for the reasons set forth herein, we **AFFIRM** the judgment of the district court dismissing Mr. Pettigrew's claims and entering judgment in favor of Defendants. Mr. Pettigrew's motion to proceed IFP is **GRANTED**.

---

[*] After examining the briefs and appellate record, this panel has decided unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[1] Because Mr. Pettigrew is proceeding pro se, his filings are construed liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010).

2

## I

On February 11, 2011, Mr. Pettigrew initiated this litigation by filing a pro se complaint under 42 U.S.C. § 1983, alleging violations of his constitutional rights. He also asserted claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. Mr. Pettigrew was granted leave to proceed IFP pursuant to 28 U.S.C. § 1915.

On April 6, 2011, a magistrate judge determined that Mr. Pettigrew's complaint was deficient because it failed to allege the personal participation of all named defendants and asserted a substantive due-process claim that was legally without merit. Accordingly, the magistrate judge directed Mr. Pettigrew to file an amended complaint. Instead of filing a timely amended complaint, Mr. Pettigrew filed an objection to the magistrate judge's order. In considering Mr. Pettigrew's objection, the district court dismissed certain defendants that were named in the complaint. It also dismissed Mr. Pettigrew's substantive due-process claim—relating to his denial of parole based upon allegedly false information contained in his prison file about his criminal history—as "legally frivolous." R. at 74 (Order to Dismiss in Part & Draw Case to Dist. Judge & Mag. Judge, filed May 18, 2011).

Mr. Pettigrew then filed an amended complaint on June 20, 2011.[2] In this

---

[2] The defendants named in the amended complaint (as described by

(continued...)

3

amended complaint, Mr. Pettigrew asserted seven claims for relief: (1) an Eighth Amendment claim, resulting from detention in a strip cell for twenty-four hours, against Defendants Zavaras, Jones, Roybal, and Comfort; (2) an Eighth Amendment claim against Defendants Zavaras, Reed, Jones, Dent, and Cross, predicated on Mr. Pettigrew's incarceration in administrative segregation from January 2005 through March 2010, and from December 2010 through the date of his amended complaint—a form of incarceration that allegedly exacerbated his mental illnesses; (3) a Free Exercise Clause claim, based on the denial from 2005 through 2010 of a religious diet and communion sought by virtue of his claimed faith, "Christian Identity," against Defendants McCormick, Reed, Hildebrand, Proffit, Jones, and Zavaras; (4) a RLUIPA claim, based on the denial of a religious diet and communion, against Defendants Reed, Jones, McCormick, Hildebrand, and Proffit; (5) an equal-protection claim predicated on the prison's failure to offer Mr. Pettigrew a Passover diet and communion (which he sought because of his claimed faith, "Christian Identity"), while offering a Passover diet

---

[2](...continued)
Mr. Pettigrew in the amended complaint) are: Aristedes Zavaras, Executive Director of the Colorado Department of Corrections; Susan Jones, Warden of Colorado State Penitentiary and Centennial Correctional Facility; Larry Reed, Ex-Warden of Colorado State Penitentiary and Centennial Correctional Facility; Sergeant Dent, Intelligence Officer; Sergeant Sandra Cross, Intelligence Officer; Macain Hildebrand, Programs Major; Captain Mary McCormick, Programs Supervisor; Darryl Proffit, Regional Coordinator of Faith and Citizens Programs; Dale Burke, Hearings Officer; C/O Comfort, Correctional Officer; and Lieutenant Roybal, Shift Commander.

to Jewish inmates and communion to Catholic inmates, against Defendants McCormick, Hildebrand, and Proffit; (6) a claim stemming from alleged violations of the Free Exercise Clause and RLUIPA based on the prison's allegedly improper limitation of two books per inmate, thereby hobbling Mr. Pettigrew's book-based religious study, against Defendants Zavaras, Jones, McCormick, and Hildebrand; and (7) a claim against Defendants Burke and Zavaras stemming from alleged violations of Mr. Pettigrew's Fourth and Fourteenth Amendment rights, allegedly caused by an internal hearing officer's imposition on Mr. Pettigrew of a restitution order on December 16, 2010.[3]

---

[3] Claim one of Mr. Pettigrew's *original* complaint was a substantive due-process claim concerning an allegation that "parole and community corrections were denied because of" purportedly false information in his CDOC file. R. at 14 (Compl., filed Feb. 11, 2011). In its order directing Mr. Pettigrew to file an amended complaint, the magistrate judge deemed that claim "deficient," *id.* at 52 (Order Dir. Pl. to File Am. Compl., filed Apr. 6, 2011), and expressly stated that Mr. Pettigrew "*should not include* a substantive due process claim concerning his parole proceedings . . . in the amended complaint," *id.* at 54 (emphasis added). Mr. Pettigrew then objected to the magistrate judge's order, specifically challenging its directive regarding his substantive due-process claim. *See id.* at 57 (Objection to Order, filed Apr. 18, 2011). In resisting the order, Mr. Pettigrew conceded that "claim one should . . . have *the community corrections allegations dismissed* but the parole allegations must stand." *Id.* (emphasis added). Two procedural outcomes flow from this statement. First, in lodging such an objection, Mr. Pettigrew unambiguously made known his intent to relinquish the community-corrections aspect of his substantive due-process argument. *See United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272–73 (10th Cir. 2007) (agreeing with our sister circuits that "an abandoned objection is waived"). And, second, Mr. Pettigrew *preserved* for appellate review his argument that the portion of his substantive due-process claim concerning parole should *not* have been dismissed.

(continued...)

5

On August 1, 2011, Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The magistrate judge recommended that the motion to dismiss be granted and that Mr. Pettigrew's amended complaint be dismissed with prejudice. Mr. Pettigrew filed an objection to the magistrate judge's recommendation on February 6, 2012. On March 30, 2012, the district court issued an order adopting the recommendation and overruling Mr. Pettigrew's objections. On April 2, 2012, the district court issued

---

[3](...continued)

Our conclusion that Mr. Pettigrew has preserved a challenge to the dismissal of the parole-based argument of his original substantive due-process claim is solidified by subsequent procedural events. Specifically, in his notice of appeal following the district court's entry of final judgment, Mr. Pettigrew did not demonstrate any signs of abandoning his substantive due-process challenge—through, for example, a specification of district court orders that *omitted* the one dismissing his substantive due-process claim. Rather, Mr. Pettigrew took his appeal from the judgment itself, which permitted him to raise any challenges to all preceding orders, including the one dismissing his substantive due-process claim. *See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002) ("[A] notice of appeal which names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment."); *see also id.* ("Having appealed from the judgment, the appellant is free to attack any nonfinal order or ruling leading up to it." (quoting 20 *Moore's Federal Practice* ¶ 303.21[3][c][iii] (3d ed. 2001)) (internal quotation marks omitted)); *accord United States v. Battles*, 745 F.3d 436, 448–49 (10th Cir.), *pet. for cert. filed*, 82 U.S.L.W. 3663 (U.S. Apr. 28, 2014) (No. 13-1309); *Montgomery v. City of Ardmore*, 365 F.3d 926, 934 (10th Cir. 2004). And we also note that, on appeal, Defendants do not argue that Mr. Pettigrew has failed to preserve his substantive due-process challenge. In sum, we are comfortable concluding that Mr. Pettigrew *has* preserved his challenge to the dismissal of his substantive due-process claim—even though it is absent from his amended complaint. (Consequently, it is not addressed in the district court's *final* order of dismissal related to the amended complaint.)

an amended order adopting the recommendation and correcting an error in the caption of the initial order. Mr. Pettigrew filed a timely notice of appeal from this order on April 16, 2012.

## II

We review de novo a district court's dismissal order under both Rules 12(b)(1) and 12(b)(6). *See Satterfield v. Malloy*, 700 F.3d 1231, 1234 (10th Cir. 2012) ("[T]he standard of review is de novo under either subsection [12(b)(1) or subsection 12(b)(6)]."); *see also ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1171 (10th Cir. 2011) ("[W]e review de novo a district court's ruling on a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim."). Moreover, in assessing the propriety of the district court's dismissal, we apply "the same legal standard as the district court." *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011). Accordingly, we must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

Even so, the plaintiff must allege facts that make his stated claim for relief facially plausible. *See Jordan-Arapahoe*, 633 F.3d at 1025. "A claim has facial plausibility when the [pleaded] factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))

7

(internal quotation marks omitted).

## III

In this appeal, Mr. Pettigrew challenges the district court's dismissal of six of the seven claims that he raised in his amended complaint,[4] the district court's dismissal of Defendants Jones and Zavaras from the case for lack of personal participation in the alleged constitutional violations, and the district court's dismissal of his substantive due-process claim. Having thoroughly reviewed the record and the briefs, we conclude that the district court's rulings as to many of the claims in this case—specifically, its dismissal of claims one, three, four, five, and six of the amended complaint, and its dismissal of Defendants Jones and Zavaras as parties to the case—were substantially correct, and can be affirmed without the need for significant elaboration. We address these claims briefly below before proceeding to the remaining issues.

## A

The district court dismissed claim one of the amended complaint, which

---

[4] Because Mr. Pettigrew has not challenged the district court's dismissal of claim seven of the amended complaint (alleging a violation of the Fourth and Fourteenth Amendments resulting from the imposition of a restitution order), we consider that claim to have been abandoned and do not address it. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."); *Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief are deemed abandoned or waived." (quoting *Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997)) (internal quotation marks omitted)).

8

alleged a violation of Mr. Pettigrew's rights under the Eighth Amendment based on his detention in a strip cell, on qualified-immunity grounds. Having reviewed the district court's order, we are satisfied that its analysis is without error, and we affirm this dismissal for substantially the same reasons set forth in the order.

Claims three through six of the amended complaint alleged violations of Mr. Pettigrew's rights under the Constitution's Free Exercise and Equal Protection Clauses and under RLUIPA. The district court dismissed each of these claims as time-barred. With one exception, we find the district court's reasoning cogent, and we affirm for substantially the same reasons set forth by the district court.

The exception relates to the limitations period applied to Mr. Pettigrew's claims under RLUIPA—that is, claims four and six.[5] As the district court

---

[5] With regard to claim six, we note that in reaching its conclusion that this claim was untimely, the district court found that Mr. Pettigrew's claim accrued on January 20, 2009, the date Mr. Pettigrew alleges that his step-one grievance related to the two-book limit was denied. Arguably, this is not the correct date. On February 10, 2009, Mr. Pettigrew's step-two grievance on the issue was denied; this would seemingly be the appropriate accrual date. Our concern on this score arises from the fact that, under the administrative-exhaustion requirements applicable to both RLUIPA and § 1983 claims, Mr. Pettigrew was legally barred from filing suit until the later date (i.e., the date of the denial of the step-two grievance). *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Cutter v. Wilkinson*, 544 U.S. 709, 723 n.12 (2005) ("[A] prisoner may not sue under RLUIPA without first exhausting all available administrative

(continued...)

9

observed, the magistrate judge in this case "found that a two-year statute of limitations applied to [Mr. Pettigrew's] claims," and Mr. Pettigrew "d[id] not object [to] the Magistrate Judge's conclusion." R. at 227 (Am. Order Aff'g & Adopting Mag. Judge's Recommendation, filed Apr. 2, 2012). Though it is quite true that the statute of limitations generally applicable to Mr. Pettigrew's § 1983 claims is two years, *see Blake v. Dickason*, 997 F.2d 749, 750–51 (10th Cir. 1993) (applying Colorado's two-year residual personal-injury limitations period to § 1983 cases), RLUIPA has a separate four-year statute of limitations, *see* 28 U.S.C. § 1658(a); *Al-Amin v. Shear*, 325 F. App'x 190, 193 (4th Cir. 2009); *Alamiin v. Miller*, No. CIV-08-1371-F, 2010 WL 3603150, at *20 (W.D. Okla. June 28, 2010) (Mag. Judge's Recommendation), *adopted by dist. ct.*, 2010 WL 3604660 (W.D. Okla. Sept. 9, 2010). We discern no reason why the district court should not have deemed a four-year statute of limitations applicable to Mr. Pettigrew's RLUIPA claims.

---

[5](...continued)
remedies."). In any event, we need not decide here whether the appropriate accrual date was January 20 or February 10, since Mr. Pettigrew's complaint was untimely under either scenario due to his waiting to file his complaint until February 11, 2011. In reaching this determination, we note that Mr. Pettigrew cannot benefit from the prison mailbox rule. Our precedent makes clear that a prisoner seeking to invoke the rule in connection with the use of the regular prison mail must demonstrate timely filing "with a notarized statement or a declaration under penalty of perjury of the date on which the documents were given to prison authorities and attesting that postage was prepaid." *Price v. Philpot*, 420 F.3d 1158, 1166 (10th Cir. 2005); *see* Fed. R. App. P. 4(c)(1). Mr. Pettigrew did not file such a statement or declaration.

Yet, significantly, Mr. Pettigrew has never challenged the application of the two-year statute of limitations—not before the district court and not in his briefing on appeal. Ordinarily, a litigant's failure to raise an issue in his appellate briefing would lead us to deem the issue waived. *See, e.g.*, *Bronson*, 500 F.3d at 1104; *Tran*, 355 F.3d at 1266. Moreover, given Mr. Pettigrew's silence regarding the limitations issue on appeal, there is not even the foundation for review under the rigorous plain-error standard. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court."). Accordingly, in affirming the district court, we acknowledge the possibility that the district court applied the wrong statute of limitations to Mr. Pettigrew's RLUIPA claims, but Mr. Pettigrew is not situated to avail himself of any error in this regard.

Finally, Mr. Pettigrew argues that the district court erred in dismissing Defendants Jones and Zavaras as parties in this case. Having reviewed the district court's order, we find that the district court correctly concluded that these individuals were improper defendants in a § 1983 action because Mr. Pettigrew failed to establish that either caused or personally participated in the alleged violations of Mr. Pettigrew's rights. Accordingly, we affirm the dismissal of these defendants for substantially the same reasons as the district court.

11

**B**

The remaining two issues that Mr. Pettigrew presents require somewhat more discussion, though we ultimately agree with the district court that each of the claims warrants dismissal.

**1**

Claim two of the amended complaint alleged an Eighth Amendment violation based on Mr. Pettigrew's placement in administrative segregation from January 2005 through March 2010, and from December 2010 through the date of his amended complaint; specifically, Mr Pettigrew alleged that the administrative-segregation placement exacerbated his mental illnesses. The district court dismissed this claim as time-barred. It found, as the magistrate judge previously had, that the claim accrued well before February 11, 2009 (which would be the earliest permissible accrual date, given that Mr. Pettigrew initiated this lawsuit on February 11, 2011).

In particular, the district court found that Mr. Pettigrew's claim accrued as early as 2005, "when he was placed in segregation . . . , even if he did not know the full extent of his injuries until some later point in time." R. at 228; *see id.* at 182–83 (Mag. Judge's Recommendation, filed Jan. 23, 2012) ("[T]he conditions [Mr. Pettigrew] complains of, . . . and the resulting alleged harm to his mental health, were allegedly as present in January 2005 as they are currently. [Mr. Pettigrew] knew, or at the least, through the exercise of reasonable diligence

12

would have known, that these conditions allegedly in violation of his constitutional rights existed far before the expiration of the statute of limitations.").

On appeal, Mr. Pettigrew argues that the district court was wrong in assuming that he was aware of the harm to his mental health during the full duration of his time in administrative segregation. Instead, Mr. Pettigrew claims he was unaware of the adverse effects that this segregation was having on him until the conditions of his confinement changed after August 2009, when he was transferred temporarily to a different facility. *See* Aplt. Opening Br. at 8 ("It was not until after August of 2009, when [Mr. Pettigrew] was placed in a different environment, that he finally knew that the isolation from ad-seg worsened his mental state.").

While we are not quick to negate the possibility that an individual in Mr. Pettigrew's position might not recognize the deleterious mental effects of prolonged solitary confinement until his circumstances materially change (and, notably, that solitary confinement ceases), we need not definitively opine on the merits of Mr. Pettigrew's argument. That is because, even if we were to agree with Mr. Pettigrew that his claim did not accrue until after August 2009 (when his confinement conditions changed), and thus the claim was *not* time-barred, we would be obliged to affirm on the alternative ground of qualified immunity. *See, e.g.*, *United States v. Corral*, 970 F.2d 719, 726 n.5 (10th Cir. 1992) ("[W]e may

13

affirm a judgment on a basis not relied upon by the lower court if supported by the record and the law."); *accord Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1217 (10th Cir. 2003).

To overcome qualified immunity, Mr. Pettigrew would need to show that two requirements are met—*viz.*, (1) that Defendants violated one of his constitutional rights, and (2) that the violated right was "clearly established" at the time of the violation. *See Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010). We need not reach the second requirement here, since Mr. Pettigrew plainly has not established the existence of an Eighth Amendment violation.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A deliberate-indifference Eighth Amendment claim has an objective component and a subjective component. *See id.* at 834. Under the objective component, a plaintiff must prove that his alleged deprivation was "sufficiently serious," i.e., that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* (internal quotation marks omitted). To satisfy the subjective component, a plaintiff must demonstrate that the defendant—the specific prison official—was aware of and ignored an excessive risk to the inmate's health or safety. *See id.* at 837; *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

Here, Mr. Pettigrew clearly has not demonstrated the subjective component

14

of a deliberate-indifference claim. Indeed, for the period prior to August 2009, Mr. Pettigrew acknowledges that even *he* was not aware of the risk posed to his mental health by his incarceration in administrative segregation. Thus, one may reasonably wonder why the prison-official defendants should be deemed to have possessed greater knowledge of the risk than Mr. Pettigrew himself. And Mr. Pettigrew has not identified anything in the record from which we might conclude that Defendants possessed such knowledge. For the period after August 2009, when Mr. Pettigrew claims to have recognized that his mental-health problems were worsening, he offers no specific reason to think that Defendants shared in his realization, nor does he suggest that he shared his own insight with them. Indeed, the only indication anywhere in Mr. Pettigrew's briefs and amended complaint that prison officials were aware of his deteriorating mental health is found in his amended complaint's statement that, after his symptoms began to worsen, he "had mental health visits about his increased mania and possible obsessive compulsive disorder." R. at 117–18. If anything, this statement suggests that once prison officials became aware of a risk to Mr. Pettigrew's well-being, they took steps to address the risk—in other words, it does *not* suggest that they recklessly ignored the risk. Thus, we may readily affirm the district court's ruling on claim two on the alternative ground that Mr. Pettigrew has not carried his burden under the qualified-immunity standard to establish that Defendants committed a deliberate-indifference Eighth Amendment violation.

15

**2**

Finally, Mr. Pettigrew appeals from the district court's dismissal of his substantive due-process claim. Mr. Pettigrew's substantive due-process claim was premised on an allegation that the parole board considered false information in his prison file concerning his criminal history in reviewing his application for parole.[6] The district court rejected this claim, noting that "[t]he Due Process Clause applies to parole proceedings only when the state parole statute creates a legitimate expectation of release," R. at 71 (citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979)), and the court ruled that Colorado's statute provided no such expectation. Thus, the court concluded that "[b]ecause Mr. Pettigrew d[id] not have a liberty interest in early release . . . , his Fourteenth Amendment substantive due process claim [was] legally frivolous." *Id.* at 73. Importantly, in conducting its analysis, the court directly responded to Mr. Pettigrew's purported constitutional concern regarding the allegedly false information in the CDOC's files, and thereby forged a nexus between the absence

---

[6]     We underscore that, as explained in note 3, *supra*, Mr. Pettigrew has preserved his challenge to the district court's dismissal of his substantive due-process claim through diligent pursuit of that argument in all proceedings before the district court. Consequently, we address this argument even though it was not raised in Mr. Pettigrew's amended complaint or addressed in the district court's final order of dismissal. Nonetheless, we reiterate that Mr. Pettigrew has *only* preserved this challenge insofar as it concerns any allegations regarding the denial of parole; he has *waived* the right to argue a substantive due-process violation insofar as it concerns the denial of community-corrections placement.

16

of a liberty interest and his concern. Specifically, the court noted that, since he did not have a constitutionally protected liberty interest in early release, "Mr. Pettigrew [could not] invoke § 1983 as a basis for challenging the validity of the information considered by the parole board or the adequacy of the process of correcting the information." *Id.* at 72 (citing *Orellana v. Kyle*, 65 F.3d 29, 31–32 (5th Cir. 1995) (per curiam)).

Having closely reviewed the record and briefs, we agree with the district court's outcome, and (as far as it goes) we are in substantial agreement with its reasoning. However, drawing on various and disparate strands of authority, Mr. Pettigrew vigorously contends that the district court misunderstood the thrust of his argument and, consequently, reached the wrong outcome. We pause to address Mr. Pettigrew's most salient contentions in this regard.

Mr. Pettigrew insists that the district court's analysis is misguided because it rests on procedural due-process authorities, such as the Supreme Court's *Greenholtz* decision, and consequently wrongly deems fatal his lack of a liberty interest in early release from prison. According to Mr. Pettigrew, he does not dispute that he has no liberty interest in early release from incarceration, but rather, he contends that state law does confer on him a constitutionally protected liberty interest in a fair parole hearing and that he also has a liberty interest in his reputation. And furthermore, at bottom, he insists that his claim rests on an infringement of substantive due-process rights.

17

**a**

Mr. Pettigrew's claimed liberty interest in a fair parole proceeding rests on Colorado statutes that (as he reads them) require, *inter alia*, the parole board to consider paroling inmates annually once they reach their parole eligibility date and to keep accurate records. But Mr. Pettigrew's argument in this regard is misguided: he is attempting to alchemically transform a purported entitlement to certain *procedures* into a constitutionally protected *liberty* interest; however, controlling precedent makes clear that such an attempt must end in failure. *See Elliott v. Martinez*, 675 F.3d 1241, 1245 (10th Cir. 2012) (noting, regarding the Due Process Clause, that "the protected interests are substantive rights, not rights to procedure"); *see also Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983) ("[A]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause."); *Shirley v. Chestnut*, 603 F.2d 805, 806–07 (10th Cir. 1979) (per curiam) (noting that "appellants sought a declaration that the Due Process Clause of the Fourteenth Amendment requires published criteria for parole release, access to adverse material in inmate files, right to subpoena witnesses at the hearing, and written reasons for the denial of parole" and holding that "[i]n the absence of such liberty interest, the specific due process procedures requested by the appellants are not applicable"); *cf. Montero v. Meyer*, 13 F.3d 1444, 1447 (10th Cir. 1994) ("Whether an interest created by state law rises to the level of a 'liberty interest' protected by the Due Process Clause of the

18

Fourteenth Amendment is a matter of federal law.").

By reference to the purported fairness of the State's parole procedures, Mr. Pettigrew cannot escape the inescapable: the gravamen of his concern is the parole board's "denials of parole," Aplt. Opening Br. at 14; yet, by his own admission, Mr. Pettigrew possesses no liberty interest that has been directly infringed by these denials. Accordingly, Mr. Pettigrew's asserted right to fair parole procedures is unavailing in this context.[7] *See Orellana*, 65 F.3d at 32 ("[B]ecause Orellana has no liberty interest in obtaining parole in Texas, he cannot complain of the constitutionality of procedural devices attendant to parole decisions.").

Under a similar logic, Mr. Pettigrew's asserted liberty interest in his reputation does not advance his cause. "Damage to one's reputation alone . . . is not enough to implicate due process protections." *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004); *see Paul v. Davis*, 424 U.S. 693, 701 (1976) ("While we have in a number of our prior cases pointed out the frequently drastic effect of the 'stigma' which may result from defamation by the government in a variety of

---

[7] Although we have suggested in the parole context that "an expectation [such as Mr. Pettigrew's], with attendant due process rights, may also be based on regulations, policies, understandings, contractual arrangements or institutional practices," *Candelaria v. Griffin*, 641 F.2d 868, 870 n.2 (10th Cir. 1981) (per curiam) (internal quotation marks omitted), this limited exception also lends Mr. Pettigrew no aid because, as was true in *Candelaria*, he "has not alleged such factors in his complaint," *id.*

19

contexts, this line of cases does not establish the proposition that reputation alone . . . is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause.").

Rather, a plaintiff in this context "must demonstrate," *inter alia*, that "the plaintiff experienced some governmentally imposed burden that 'significantly altered [his or] her status as a matter of state law.'" *Gwinn*, 354 F.3d at 1216 (alteration in original) (quoting *Paul*, 424 U.S. at 710–11). In this regard, Mr. Pettigrew contends that the parole board's use of "blatantly false information in his [C]DOC file" had the effect of "changing his inmate status." Aplt. Opening Br. at 15. But it is patent from his briefing that the purported change in his status that Mr. Pettigrew bewails stems from the parole board's decision to keep him incarcerated and thus "to deny his freedom," *id.*—that is, to deny him release on parole. Yet, as we have noted—and Mr. Pettigrew does not dispute—he does not possess a substantive state-law right to a status involving such release. Accordingly, Mr. Pettigrew's assertion of reputational harm does in fact stand "alone" and, therefore, "is not enough to implicate due process protections." *Gwinn*, 354 F.3d at 1216.

### b

In insisting that the district court was misguided in relying on *Greenholtz* and its procedural due-process progeny in deciding that the absence of a liberty interest was fatal to his due-process claim—which he has labeled a substantive

due-process claim—Mr. Pettigrew notably cites the Third Circuit's decision in *Block v. Potter*, 631 F.2d 233 (3d Cir. 1980). There, the court held the following: "Even if a state statute does not give rise to a liberty interest in parole release under *Greenholtz*, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *Id.* at 236.

*Block* has been interpreted as holding that "denial of parole may give rise to a substantive due process violation even though there is no liberty interest in parole." *Rauso v. Vaughn*, No. CIV. A. 98-CV-6312, 1999 WL 111474, at *1 (E.D. Pa. Mar. 2, 1999); *see Wildermuth v. Furlong*, 147 F.3d 1234, 1239 n.7 (10th Cir. 1998) (Anderson, J., dissenting) (citing *Block* and noting that "at least one circuit, the Third, has held that although an inmate may have no liberty interest in parole, and thus no procedural due process claim, that inmate may nevertheless bring a substantive due process claim"); *see also* Aplt. Opening Br. at 13 (noting that the "*Block* [inmate] does not claim to have a liberty interest in parole that must be preserved by procedural safeguards but rather states that otherwise satisfactory procedures were applied arbitrarily and in an impermissible manner, thus *Greenholtz* did not apply" (first italics added)). *But see Burkett v. Love*, 89 F.3d 135, 140 (3d Cir. 1996) (describing "*Block*'s premise" in equal-protection terms); *Robles v. Dennison*, 745 F. Supp. 2d 244, 294 (W.D.N.Y. 2010) ("Although the *Block* court characterized the petitioner's argument as a due

21

process claim, given its use of the term 'liberty interest', the facts of the [case] suggest that it was an equal protection issue.").

"However, not only has this position [of *Block*] been rejected by other circuits . . . , but it has also been called into doubt by the Third Circuit itself." *Wildermuth*, 147 F.3d at 1239 n.7 (Anderson, J., dissenting); *see Bell v. Anderson*, 301 F. App'x 459, 462 (6th Cir. 2008) (per curiam) ("Unfortunately for the petitioner, the reasoning [of, *inter alia*, *Block*] . . . has not been adopted in this circuit. Moreover, that analysis has been criticized by other courts."); *Robles*, 745 F. Supp. 2d at 293 n.16 ("Courts within the Third Circuit as well as courts from outside that circuit have criticized *Block*."). That *Block* has been so roundly rejected is not entirely surprising, since its holding at least arguably divorces certain substantive due-process claims from their textual grounding in the Constitution; specifically, a plaintiff need not demonstrate under *Block* that he has been deprived of a "liberty" interest in the parole proceeding at issue. *Compare Block*, 631 F.2d at 236 ("*Even if a state statute does not give rise to a liberty interest* in parole release under *Greenholtz*, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause . . . ." (emphasis added)), *with* U.S. Const. amend. XIV, § 1 ("[N]or shall *any State deprive any person of* life, *liberty*, or property, without due process of law . . . ." (emphases added)); *see Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) ("A due process claim under the Fourteenth Amendment can only be

22

maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered."); *see also Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) ("[T]o prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest."); Rosalie Berger Levinson, *Protection Against Government Abuse of Power: Has the Court Taken the Substance Out of Substantive Due Process*, 16 U. Dayton L. Rev. 313, 360 (1991) ("Assuming that a *property or liberty interest* within the historically broad meaning of those terms has been adversely affected by intentional or recklessly indifferent government misconduct, federal courts should recognize a viable substantive due process claim." (emphasis added) (footnotes omitted)); *cf.* 2 Roland D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 14.6(a)(ii), at 723 (5th ed. 2012) ("The concept the Court employs to control the substance of legislation under the due process clause is that certain types of lawmaking go beyond any proper sphere of governmental activity. . . . The judicial premise for this position is that any *life, liberty or property* limited by such a law is taken without due process because the Constitution never granted the government the ability to pass such a law." (emphasis added)).

Moreover, Mr. Pettigrew does not suggest—nor does our research indicate—that we have ever adopted a holding akin to that in *Block*. *See Wildermuth*, 147 F.3d at 1239 n.8 (Anderson, J., dissenting) ("Our circuit has not

23

directly addressed this issue in a published opinion, but in an unpublished opinion we cited *Greenholtz* and concluded there was no substantive due process violation where there was no liberty interest in parole." (citing *Reed v. Hinckley*, 951 F.2d 1260, 1991 WL 268915, at \*1 (10th Cir. Dec. 10, 1991))).[8] In light of the prevailing unfavorable view of *Block* among our sister circuits, and in the absence of any cogent arguments from Mr. Pettigrew, we are disinclined to adopt *Block*'s substantive due-process reasoning here.

Even if we did so, however, *Block* would not lend Mr. Pettigrew any succor. "Where the Third Circuit has found arbitrary action to qualify as a cognizable due process claim, it has done so only upon the establishment of egregiously arbitrary actions." *Bell*, 301 F. App'x at 462. The bar to obtain relief under this rubric "is an exceptionally high one." *Id.* In this regard, there is no suggestion here that the parole board denied Mr. Pettigrew relief "on the basis of race, religion, or political beliefs," which, as *Block* intimated, might satisfy that standard. 631 F.2d at 236 n.2. And, although Mr. Pettigrew asserts that "his case manager verified that false information was in his [C]DOC file," Aplt. Opening

---

[8] In denying the prisoner's 28 U.S.C. § 2254 petition on the merits, rather than dismissing it "[b]ecause [Petitioner] does not allege the violation of a federal right," *Wildermuth*, 147 F.3d at 1239 (Anderson, J., dissenting), the majority in *Wildermuth* was completely silent regarding Judge Anderson's alternate path for rejecting Petitioner's claims and did not cite, much less endorse, the substantive due-process position of *Block*. So, we do not view the *Wildermuth* majority as addressing—one way or the other—the precise issue before us today.

24

Br. at 16, Mr. Pettigrew has not established that the parole board itself was aware that it was acting on false information regarding his criminal background, and Defendants do not concede as much in their briefing before us. Thus, at most, Mr. Pettigrew's assertions indicate that the parole board may have acted unwittingly or negligently in denying him relief, and such unintentional conduct does not implicate the Due Process Clause. *See Daniels v. Williams*, 474 U.S. 327, 332 (1986) ("Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law."). *Compare Monroe v. Thigpen*, 932 F.2d 1437, 1441–42 (11th Cir. 1991) (rejecting defendants' argument that "because there is no liberty interest in parole release or in a particular security classification [Plaintiff] has no right to due process in the procedures relating to parole release" and that "so long as the Alabama parole statute confers no liberty interest in parole they may rely on *admittedly false* information in denying parole without offending the Due Process Clause" (emphasis added)), *with Parker v. Dinwiddie*, No. 08-6124, 2009 WL 175053, at *1–2 (10th Cir. Jan. 27, 2009) (citing *Monroe* and noting that "[w]e have not adopted (and do not now adopt) the Eleventh Circuit's due process construction but, even if we were to do so, [Petitioner] has not alleged the necessary facts to support his claim," in that he "failed to allege the state officials

25

relied on *admittedly false* information in the decision to deny parole" (emphasis added)).

c

Lastly, Mr. Pettigrew seeks shelter in our explication of the Supreme Court's substantive due-process jurisprudence in *Seegmiller v. LaVerkin City*, 528 F.3d 762 (10th Cir. 2008). There, we observed, "The Supreme Court has described two strands of the substantive due process doctrine. One strand protects an individual's fundamental liberty interests, while the other protects against the exercise of governmental power that shocks the conscience." *Id.* at 767. Regarding these two strands, Mr. Pettigrew avers that "he actually satisfies both." Aplt. Opening Br. at 15. We disagree.

"A fundamental right or liberty interest is one that is 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty.'" *Seegmiller*, 528 F.3d at 767 (quoting *Chavez v. Martinez*, 538 U.S. 760, 775 (2003)). If, as the Supreme Court instructs, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz*, 442 U.S. at 7—and, indeed, Mr. Pettigrew even concedes that he has no state-law interest of this sort—we are hard-pressed to see how Mr. Pettigrew could plausibly claim that his interest "in his good name," Aplt. Opening Br. at 15—or, for that matter, any other interests related to his efforts to be released from incarceration before the expiration of his

26

term—could constitute a "fundamental liberty interest," *Chavez*, 538 U.S. at 775, as understood by the Supreme Court.  *See Robles*, 745 F. Supp. 2d at 290 ("The Supreme Court has held that a convicted petitioner has no right to release from prison before the expiration of a valid sentence.  Clearly, then, the possibility of parole release cannot qualify as one of the fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed . . . ." (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)) (internal quotation marks omitted)).  Accordingly, Mr. Pettigrew has not satisfied the first strand of the substantive due-process doctrine.

Mr. Pettigrew likewise cannot satisfy the second strand of this doctrine. "Conduct that shocks the judicial conscience [in the context of substantive due process] . . . is *deliberate* government action that is 'arbitrary' and 'unrestrained by the established principles of private right and distributive justice.'" *Seegmiller*, 528 F.3d at 767 (emphasis added) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  Putting aside Mr. Pettigrew's failure to establish the legal predicate of a protected liberty interest, the reasons that led us to reject the application of the arbitrary-conduct rubric of *Block* in the immediately preceding section (Part III.B.2.b, *supra*) lead us ineluctably to the same result in this section: we conclude that the parole board's denial of relief to Mr. Pettigrew—which, at most (on this record), may have been inadvertently or

27

negligently based in part on false information—does not come close to shocking the judicial conscience. Accordingly, Mr. Pettigrew cannot prevail on the merits.

In sum, we conclude that the district court correctly rejected Mr. Pettigrew's substantive due-process claim.

## IV

For the foregoing reasons, the judgment of the district court is **AFFIRMED**. Although he did not prevail, we find that Mr. Pettigrew "has demonstrated . . . the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal," *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997) (internal quotation marks omitted), and, accordingly, his motion to proceed IFP on appeal is **GRANTED**.

Entered for the Court

JEROME A. HOLMES
Circuit Judge